Genet *v.* Davenport.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, March 5, 1873. *Miller, Potter* and *Parker*, Justices.]

---

EDME J. GENET *vs.* NELSON DAVENPORT and others.

The plaintiff, being the owner of a farm, and having a contract with C. for the purchase of fifty-two acres adjoining it, made a verbal agreement with K. to sell and convey to the latter 110 acres, including part of the fifty-two acres, to be paid for by K. as follows: K. was to satisfy a judgment which he held against the plaintiff; pay the amount due to C. upon the contract for the fifty-two acres; take a deed from C., and convey the part not included in the 110 acres, to the plaintiff; and to give his bond and mortgage for the balance. The plaintiff's farm was then incumbered by two mortgages to the state and a judgment held by S., of which K. had notice. The agreement was so modified that the plaintiff and K. were to join in obtaining a release of the 110 acres from the mortgages, and K. was to give a mortgage for $5,000, upon the 110 acres, to the state, as a consideration for the release. The agreement was so far carried out that C., by the plaintiff's direction, conveyed the fifty-two acres to K., upon K.'s paying him the amount due upon the contract. Delay ensuing, in obtaining the release from the state, K. told the plaintiff that their negotiations were at an end, and that he should make war upon him. K. then bought in the S. judgment, and caused supplementary proceedings to be commenced thereon, and had a receiver appointed, who sold the plaintiff's interest in the fifty-two acres, at auction, and K. became the purchaser. *Held* that the plaintiff could redeem the fifty-two acres from K. or a purchaser claiming under him with notice of the plaintiff's equities.

One is not a *bona fide* purchaser unless he has paid his money, before notice; to have given his obligation is not sufficient.

A mortgage, not introduced at the trial, may be read upon the argument at General Term, to supply defects in the proof; and a judgment may be reversed upon facts so shown.

APPEAL, by the plaintiff, from a judgment entered upon the report of a referee.

The facts sufficiently appear from the opinion.

*George C. Genet,* for the plaintiff. ·

*N. Davenport,* defendant, in person.

*E. F. Bullard,* for the defendant Ketchum.

P. POTTER, J.   The referee to whom this action was referred has found the following facts :

"That on or about the first day of April, 1869, the plaintiff was in possession of the premises firstly described in the complaint, containing 286 acres, and was the owner in fee of 234 acres thereof, and had a valid contract for the purchase of the fifty-two acres thereof secondly described in the complaint with James F. Chamberlain, for the sum of $2,500, whereof the plaintiff had paid $1,000, and was entitled to a deed thereof upon the payment of the balance and interest.

That on or about said date and while the plaintiff so held the premises aforesaid, he made an agreement with the defendant Ketchum, whereby it was mutually agreed between them as follows: The plaintiff to sell and convey by good and sufficient deed, free from all incumbrances, to said Ketchum, 110 acres of the said 286 acres, the same to be surveyed and laid out from the southerly part thereof, so as to embrace a part of said fifty-two acres, for the sum of $8,000, payment therefor to be made by Ketchum as follows: Ketchum was the plaintiff in and owner of a judgment recovered in the Supreme Court and dockected in Rensselaer county on the 21st day of December, 1868, against said Genet, for $1,545.25, which was to be deducted from the said $8,000. Ketchum was to pay said Chamberlain the amount due him upon the contract for the purchase by Genet of the fifty-two acres aforesaid, take a deed thereof in his own name from Chamberlain, deduct such payment from the $8,000, and convey to Genet so much of the fifty-two acres as should not be embraced within

said 110 acres. The balance, estimated at $5,000, Ketchum was to give Genet his bond and mortgage upon the 110 acres for, payable in five equal annual instalments with interest; Genet to give Ketchum a deed for the 110 acres as soon as the survey should be made; the understanding being that the contract should be consummated sometime during that spring.

At the time of the above agreement, which was verbal, plaintiff's premises aforesaid held by him in fee were incumbered by two mortgages held by the people of the state of New York; each mortgage being upon separate parcels thereof, and together amounting to $10,000 and some accrued interest; they were also incumbered by a judgment recorded in the Court of Common Pleas of the city of New York against the plaintiff Genet and in favor of William L. B. Steers and others for $503.72, on the 26th of March, 1868. Also by a judgment against plaintiff in favor of Cornelius Van Rensselaer for $566.07. Ketchum knew these facts, and the plaintiff suggested to him that he, Ketchum, could probably buy the Steers judgment for a small sum, and requested him to do so for plaintiff's benefit, but Ketchum made no agreement to do so. Shortly after making the agreement aforesaid the plaintiff and Ketchum so modified it that Ketchum, in lieu of the $5,000 mortgage to be given to Genet, agreed to give a mortgage to the state for $5,000 upon the 110 acres to be conveyed to him, provided the state, through its attorney general, would release the 110 acres from the lien of the two mortgages aforesaid, and the plaintiff in good faith entered into negotiations with the attorney general to accomplish this result; this negotiation was delayed from time to time on account of difficulties in complying with the rules adopted by the attorney general's office, but without fault of the plaintiff, and both acquiesced in the delay up to the middle of September, 1869. In pursuance of the agreement aforesaid, on the 22d day of July, 1869, the said James

F. Chamberlain and his wife, at the request of the plaintiff, delivered the deed of the fifty-two acres aforesaid to Ketchum, who thereupon paid said Chamberlain $1,669, that being the balance due Chamberlain from Genet upon the contract between Chamberlain and Genet for the sale of said fifty-two acres to Genet. The deed vested the title to the fifty-two acres in Ketchum in fee, and he thereupon entered into possession of the same. Meanwhile plaintiff had caused the necessary survey of the 110 acres to be made, stakes had been driven by the surveyor to indicate its boundary lines, and his field notes afforded the necessary data for a correct description thereof. About the middle of September, 1869, Ketchum assumed from the delay in carrying into effect the arrangement with the Attorney General in regard to releasing the 110 acres from the lien of the state mortgages, that the arrangement would not be effected, and told the plaintiff so. Some further attempt was made by the plaintiff to close the agreement or cancel it with Ketchum, but without success. The plaintiff was in embarrassed circumstances, and could not obtain the release of the 110 acres without the assistance of Ketchum, which about this time Ketchum refused further to extend, and on the 15th day of October, 1869, told the plaintiff that their negotiations were at an end and that he should make war upon him to recover his money back. Ketchum then entered into negotiations for the purchase of the Steers judgment aforesaid, and on the 25th day of November, 1869, purchased the same from the plaintiffs therein for $125 and took an assignment thereof to Joseph W. Peckham, Ketchum's brother-in-law, and for Ketchum's benefit. On the 17th of February, 1870, Ketchum caused proceedings supplementary to execution upon said judgment to be commenced. The defendant Parke, who was a clerk in defendant Davenport's office, (Davenport being a practising lawyer in the city of Troy,) drew the necessary papers, procured from the

Rensselaer county judge an order for the examination of Genet on oath touching his property, before the defendant Davenport who was named referee in said order. The said order contained the usual injunction restraining the plaintiff Genet from disposing of or interfering with his property. Such proceedings were thereupon had that the defendant Parke was, on the 4th day of April, 1870, appointed receiver of all the property and equitable interests of the plaintiff Genet. Defendant Parke assumed the trust, filed his bond, advertised in due form and time all the plaintiff's interest in the fifty-two acres for sale at public auction, and on the 4th day of June, 1870, at the court-house, in the city of Troy, in pursuance of such advertisement, sold as receiver, the said fifty-two acres to Ketchum for $100, Ketchum being the highest bidder and that sum being the highest bid therefor, and as receiver on the 2d day of July, 1870, executed and delivered a deed of the same to Ketchum, who caused said deed to be recorded on the 9th of July, 1870, in the Rensselaer county clerk's office. In December, 1869, the attorney general of the state commenced an action in behalf of the people, against Genet and others, for the foreclosure of the mortgages aforesaid held by the state against plaintiff's said premises. This action was advised by Ketchum, who drew the complaint in foreclosure and rendered other service to facilitate the action; judgment of foreclosure and sale was entered up on default of the defendants on the 28th of June, 1870, and on the 27th day of August, 1870, the said premises of the plaintiff (not including the fifty-two acres) were sold by virtue of said judgment at public auction at the court-house in Troy, to Nelson Davenport, the defendant, for $14,250, he being the highest bidder and that sum being the highest bid. The premises were first exposed for sale by the referee in foreclosure in two parcels, but, no bids being received, were then offered for sale in one parcel and sold as

Genet *v.* Davenport.

aforesaid to the defendant Davenport. These foreclosure proceedings were regularly conducted according to the statute and the practice of this court. The amount required by the terms of sale to be paid the state, $4,250, being the costs and one-fourth the principal and interest of said mortgages, was paid on the day of sale, by Davenport, to the referee; the surplus over that amount, being $2,346.08, was secured by the check of Davenport, indorsed by Ketchum, and was subsequently paid to the referee. The balance due the state was, by the terms of sale, to be secured by mortgage of the purchaser at the expiration of the time allowed by the statute for redemption, if the premises should not be redeemed. On the 13th of September, 1870, the plaintiff, upon service of affidavits and notice upon the attorney general, made a motion before the Special Term of the Supreme Court at Albany, Justice Learned presiding, to set aside the sale in foreclosure for alleged irregularity.

The attorney general and the defendants Davenport and Ketchum appeared and opposed the motion. It was denied by the court, upon the ground, among others, that a receiver having been appointed of the plaintiff's property and equitable interests, the plaintiff had no standing in court to be heard. The plaintiff claimed, upon this motion, that as the premises sold were covered, one parcel by one mortgage and another by another, each parcel should have been sold separately, so that at his election he might redeem one or the other parcel. On the hearing of this motion, and afterwards, Davenport and Ketchum offered to allow the plaintiff to redeem from Davenport or take an assignment of Davenport's bid. This led to negotiations between the plaintiff and Davenport and Ketchum, but Davenport demanding to be paid certain allowances which the plaintiff was unwilling to make, nothing was effected. No redemption being made, the sale became absolute at

the expiration of three months, and was confirmed by an order of the court on the 26th of December, 1870, and Davenport received a deed of the premises sold on foreclosure from the referee. Ketchum, within the time allowed by the rules, filed claims for the surplus money, one in his own name as owner of the judgment against the plaintiff for $1,545.25 and interest, and one in the name of Peckham upon the Steers judgment for $503.72 and interest. A referee was appointed, and such proceedings had that on the 31st day of January, 1871, an order was made by the court at Special Term, Justice Hogeboom presiding, that said surplus, less one-third thereof, was ordered paid to Ketchum or his attorney. The surplus satisfied the Steers judgment and part of the Ketchum judgment. The one-third of the surplus was ordered to be invested during the joint lives of the plaintiff and his wife, and the interest to be paid to Ketchum during the lives of both the plaintiff and his wife, and the principal upon the death of the plaintiff's wife. The plaintiff had notice of the proceedings for the surplus, and appeared by counsel thereon. At the date of the foreclosure sale Ketchum and Davenport entered into an agreement whereby Ketchum agreed to convey to Davenport the fifty-two acres aforesaid, and assign to him the two judgments owned by Ketchum, as aforesaid, for $3,000, if Davenport should become the purchaser of said mortgaged premises. In pursuance of this agreement Ketchum subsequently conveyed the fifty-two acres to Davenport, who entered into possession thereof, and Ketchum allowed Davenport to receive the surplus money applied upon said judgment as aforesaid. At the time of receiving the conveyance from Ketchum, Davenport did not know that the plaintiff claimed any interest in the fifty-two acres. The fifty-two acres were reasonably worth $2,600. The premises sold under the mortgage were reasonably worth $75 per acre."

The above findings are all fully supported by the evidence, except the finding "that Davenport at the time of receiving his conveyance from Ketchum, did not know that plaintiff claimed any interest in the fifty-two acres." The evidence upon that point, before the referee, showed that Davenport had executed to Ketchum a mortgage for $3,000, and had paid him $70 in cash, and it was left ambiguous as to the time. But upon the argument of this appeal, the plaintiff's counsel has produced the mortgage itself to the court, which, though objected to, he can properly do. (*Rockwell* v. *Merwin,* 1 *Sweeney,* 484, 489. 45 *N. Y.* 166. 2 *Sandf.* 718.) From this mortgage it appears that it was given and acknowledged January 27, 1871. The oral evidence shows that the payment of $70 was made at the time of the execution of the mortgage, and if this testimony could be strengthened, that it was done at the date mentioned last above; it will appear by the amounts, which severally make it up; the mortgage having been given for the full amount of the purchase, and the payment of $70, which is said to be on account of interest, is the exact amount which would be due for interest from August 27, 1870, the day of the agreement, and January 27, 1871, the date of the mortgage. The complaint was served on Davenport December 31, 1870. Therefore, not only from this, but from all other circumstances in the case, from the relations of Davenport and those with whom he was associated in his office, and the proceedings which had been had in his office, as the case shows, he had full notice of the plaintiff's equities before he gave his mortgage, or paid the money; and he therefore loses the legal character of a *bona fide purchaser.* (1 *John. Ch.* 301. *Griswold* v. *Miller,* 15 *Barb.* 520.) I am inclined to think the other rulings of the referee cannot be changed upon this appeal, by a review of the evidence, and of the findings thereon. Ketchum's interest in the fifty-two acres had been acquired by him

solely by means of undertakings and engagements between himself and the plaintiff, which, on his part, he not only did not perform, but on the contrary, he used the plaintiff's engagements to him as the instruments of oppression and pecuniary embarrassment of the plaintiff; and the title which Ketchum so held for certain specified purposes was abandoned for those purposes; and the position of grantee he used inequitably under color of legal proceedings taken by him, to put the plaintiff in a condition to cut off his redemption to any part of his estate. The title Ketchum so acquired, and so wrongfully and oppressively used, constituted him in equity a trustee, and the plaintiff became his *cestui que trust*. (*See Sugd. on Vend. and Pur.*, ch. 20.)

The foreclosure proceedings under the mortgages to the state appear to have been regularly conducted, and Davenport seems to have become the legal purchaser. However much we may feel inclined to give the plaintiff relief as to these, on the ground of Ketchum's acts of bad faith and oppression towards the plaintiff, through which his right to redemption was cut off, we are unable, under any head of equitable jurisdiction, to find a substantial ground which will warrant us, upon the findings of fact, to grant relief to the plaintiff against the effect of the foreclosure of the state mortgages. I am of opinion, therefore, that the judgment appealed from should be modified as follows: That the plaintiff, instead of recovering against Ketchum the sum of $1,079.47, as found by the referee, be allowed to redeem the said fifty-two acres from the defendant Davenport upon the payment of the sum of $1,669, with interest from 22d July, 1869, less the plaintiff's costs against Ketchum in the court below as taxed, and the interest thereon, and the costs of this appeal; and less also the rents and profits of the said fifty-two acres since the taking possession thereof by the said Ketchum; and that an accounting be had before a referee to be appointed to

ascertain the amount of said rents and profits and the balance so to be paid, in order to procure such redemption. Unless the parties agree, such order to be settled by one of the justices of this court.

MILLER, P. J., and PARKER, J., concurred in the result.

Judgment accordingly. (a)

(a) Affirmed by Court of Appeals. *See* 56 *N. Y.* 676.